# EXHIBIT A

0036 0512*22 RCO E639793

**Law Office of William P. Perniciaro**
**84 New Dorp Plaza**
**Staten Island, NY  10306**

Phone 718-667-5000
Fax 718-667-0798

William Perniciaro
New York and New Jersey Bar Admission

New Jersey Office:
615 Chesterfield-Arnystown Road
Trenton, New Jersey  08620
609-291-0355

May 5, 2022

## VIA REGULAR MAILWITH DELIVERY CONFIRMATION

JP Morgan Chase & Co.
383 Madison Avenue
New York, NY 10017

**Re:  Leto v. JP Morgan Chase & Co.**
**Index Number:  150550/2022 (Richmond County)**

To Whom It May Concern:

My office represents the Plaintiff in the above referenced lawsuit.

Enclosed you will find three (3) papers:

1.    A **Summons and Complaint** which I am serving upon you
      pursuant to New York law under section 312-a of the New York
      Civil Practice Law and Rules;

2.    Two (2) copies of a **Statement of Service by Mail and**
      **Acknowledgement of Receipt by Mail (the "Receipt")**; and

3.    A **return envelope**, postage prepaid, addressed to my office.

Within thirty (30) days you are requested to fill-out and sign the
Receipt, and mail it to me in the return envelope provided.  By doing
this **you are saving yourself the cost** of my office having to hire a
process server to deliver the Summons and Complaint to you by
traditional means.

You will then have twenty (20) additional days, from the day you mail or deliver the Receipt to my office, to serve your Answer the Summons and Complaint.

I thank you for your cooperation in this regard.

Sincerely Yours,

**WILLIAM PERNICIARO**
WPP:km

Encl: Summons and Complaint
      Statement of Service by Mail and Acknowledgement of Receipt
      Return Envelope

|  | Index No.: |
|---|---|
|  | Date Purchased: |

SUPREME COURT OF THE STATE OF NEW YORK
RICHMOND COUNTY

**Plaintiff designates:**
**Richmond County**
as the place of trial.

FILIPPO LETO,

               Plaintiffs,

The basis of the venue is:
**Unconsolidated Laws §7401 (3)(county in which the cause of action arose)**

            against

# SUMMONS

JP MORGAN CHASE & CO.; and JOHN DOE, a fictitious name, real name unknown, representing the individuals and/or entities, engaging in unlawful activities described below;

               Defendant(s)

Plaintiff resides at:
**174 Cranford Avenue**
**Staten Island, NY  10306**

**To the Above-Named Defendants:**

You are hereby summoned and required to serve upon plaintiff's attorney an answer to the complaint in this action within twenty (20) days after the service of this summons, exclusive of the day of service, if this summons is personally delivered to you within the State of New York, or within thirty (30) days after service is complete, if this summons is not personally delivered to you within the State of New York. In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the attached complaint.

The county of residence and address of defendants:

**JP MORGAN CHASE & CO.:**
383 Madison Avenue, New York, NY  10017

**Dated: February 21, 2022**

From:

*William Perniciaro*

WILLIAM PERNICIARO, ESQ.
Attorney(s) for Plaintiff
84 New Dorp Plaza, Suite 205
Staten Island, NY  10306
Telephone:      718-667-5000
Facsimile:       718-667-0798
Cell:             732-991-0204
Email:          wperni@msn.com

**Notice: The nature of this action is** for monetary damages for alleged employment discrimination by JP Morgan Chase & Co., its agents, servants, and employees, in that Plaintiff was the victim of national origin discrimination resulting in employment termination on or about June 22, 2021.

**The relief sought is:**    Judgment in Plaintiff's favor on each Cause of Action, Reinstatement, and Monetary and Punitive Damages in the amount of $10,000,000.00, plus interest, attorney's fees and costs.

SUPREME COURT OF THE STATE OF NEW YORK
RICHMOND COUNTY

---

FILIPPO LETO,

                    Plaintiff,

                  -against-

JP MORGAN CHASE & CO.; and JOHN
DOE, a fictitious name, real name unknown,
intended to be the individual(s) or entit(y)(ies)
which unlawfully engaged in unlawful
discriminatory practices, as set forth below,

                    Defendants.

**INDEX NO:**

**COMPLAINT**

---

Plaintiff, by his attorney, William P. Perniciaro, respectfully alleges:

## I.    THE PARTIES.

1.    FILIPPO LETO (the "Plaintiff") is a natural person residing in Richmond County, New York.

2.    JP MORGAN CHASE & CO. (the "Defendant" or "Chase") is a financial holding company incorporated in the State of Delaware and headquartered at 383 Madison Avenue, New York, NY 10017.

3.    JOHN DOE is a fictitious name which Plaintiff provides to serve as a placeholder in the caption if Plaintiff has incorrectly named the responsible part(y)(ies).

## II.    INTRODUCTION.

4.    In 2006, the Defendant employed the Plaintiff as a branch manager at a bank the Defendant operated located at 1151 Hylan Boulevard, Staten Island, NY 10305.

5.    On or about June 22, 2021, the Defendant terminated the Plaintiff's employment at a meeting in Richmond County.

6.    Plaintiff alleges that the Defendant, its agents, servants and/or employees, based the termination, in whole or part, on Plaintiff's actual or perceived national origin; in this case Italian-American.

7.    Plaintiff files this action under New York State Executive (Human Rights) Law §296 and New York City Administrative Code §8-107, which prohibit Unlawful Discriminatory Practices including discharge from employment because of an individual's national origin.

8.    Plaintiff seeks reinstatement, monetary, special and punitive damages, attorney's fees, and costs.

## III.    JURISDICTION and VENUE

9. The court has Subject Matter Jurisdiction because the Supreme Court of the State of New York has general jurisdiction over all matters concerning New York State and City (local) law.

10. No other court has a grant of exclusive jurisdiction of this matter based either upon subject matter or amount in controversy.

11. The court has Personal (*in personam*) Jurisdiction over the Defendant in that it is headquartered in the State of New York, committed alleged tortious acts or statutory violations in the State as set forth in this complaint, and/or has substantial business contacts in the State.

12. Venue lies in Richmond County because New York Unconsolidated Laws §7401(3)(Actions by and Against a Corporation) requires Plaintiff to file in the county where the cause of action arose.

## IV.   FACTUAL BACKGROUND

13. The Plaintiff is married for eighteen (18) years with two (2) children.

14. Plaintiff owns his home in Staten Island, New York.

15. Plaintiff attended Pace University and Xaverian High School.

16. Plaintiff began working for the Defendant in 1999 as a bank teller.

17. Plaintiff became a branch manager in 2006.

18. Plaintiff's supervisors and customers admired his calm manner and consistent even-handed approach to every task

19. Plaintiff was always the first one in the door at 8:00 a.m. and last to leave, usually about 6:00 p.m.

20. Plaintiff began each workday checking ATM levels to assure adequate cash levels, usually in the range of $100,000.00 to $200,000.00.

21. Plaintiff performed this job with another individual, to assure "dual control" of this critical task.

22. Plaintiff would then meet with his bankers to discuss upcoming appointments, any plans or goals for the day, the needs to be addressed, and setting of lunch breaks to assure seamless availability of staffing to service customers.

23. Plaintiff's duties also included personal direction of loan officers, investment advisors, business specialists, and tellers.

24. Plaintiff also set up morning "call blocks" to potential and existing customers.

25. Plaintiff further checked and answered dozens of incoming emails from customers, colleagues, and other important stakeholders.

26. Plaintiff usually conducted a conference call with his supervisor and other managers, including the Staten Island manager and Market Director, to allow for daily coordination and implementation of company policy.

27. After all this work, Plaintiff would have "lunch" at his desk.

28. During "lunch" Plaintiff filled in for whomever was at lunch which could mean performing tasks of bankers and tellers.

29. Between 2:00 to 3:00 p.m. Plaintiff conducted meetings with bankers to go over the day's problems and challenges, in order to further train them, and offer suggestions for improvement.

30. At approximately 3:00 p.m. each day, Plaintiff set aside time for afternoon "call blocks" for the purpose of soliciting new business and cultivating relationships with existing customers.

31. Plaintiff would then schedule appointments with these individuals in order to "keep in touch," and thereby assure existing customers that Chase values their business.

32. At around 4:00 p.m. Plaintiff spoke with the Financial Advisors to discuss the day's prospects, and how to follow up or satisfy customer needs.

33. Shortly after that task, Plaintiff returned all remaining customer phone calls which served to reassure them that Chase took their complaints or queries seriously.

34. Plaintiff then began preparing "closing procedures" under which he locked all desks to protect customer information.

35. That process continued with printing of the day's report and checking that signature cards were properly scanned, usually occurring about fifty (50) times a day.

36. Plaintiff then set the vault alarms and instructed tellers to "square up" for the day with no one leaving until workers performed this task Plaintiff's satisfaction.

37. Plaintiff then moved approximately $10,000.00 to $12,000.00 to the vault for safekeeping.

38. All closing steps were double and triple checked for accuracy and compliance with company policy.

39. Plaintiff would then go home.

40. Plaintiff performed the above tasks day-after-day, month-after-month, year-after-year, without complaints, problems, issues, errors, or deficiencies.

41. Plaintiff's performance evaluations were all excellent and he was beloved in the company and his community.

42. On or about May 25, 2021, Chase Human Resources ("HR") sent Plaintiff an email asking if he had time to discuss something.

43. The HR representative also wanted to have a witness on the line.

44. She stated the "Plaintiff" was under an Anti-Money Laundering ("AML") investigation for possible "structuring" of cash withdrawals from his own bank account in February and March (2021) in order to avoid filing a Currency Transaction Report ("CTR").

45. "Structuring" is the breaking up of transactions (i.e.: in multiple amounts of less than $10,000.00) for the purpose of evading the filing of a CTR.

46. A bank files a CTR to report any cash transaction that exceeds $10,000.00 to bank regulators.

47. This helps detect money laundering, terrorist financing and other criminal acts, and the misuse of the nation's financial institutions.

48. Plaintiff immediately acknowledged his full awareness of the cash withdrawals because he was performing home renovations.

49. All the withdrawals originated from deposits consisting of Plaintiff's wages, bonuses, or Internal Revenue Service ("IRS") tax refunds.

50. There were no cash deposits from untraceable sources.

51. Plaintiff was able to provide all the receipts for the home renovations from legitimate business operations such as Home Depot which precisely corresponded with the withdrawals.

52. These were also close in time with the renovations.

53. Plaintiff further openly stated he did not have an actual contract with a contractor because he was working with a cousin (Giuseppe Graziano) who happens to be a licensed contractor.

54. Giuseppe Graziano is the owner of Italian Painting Corp., holder of Home Improvement Contractor License Number

1148494-DCA issued by the New York City Department of Consumer Affairs.

55.    This company also appears in the New York State Department of State database under Identification Number 2707518 designating it a Domestic Business Corporation, and clearly identifying Mr. Graziano as Chief Executive Officer.

56.    The arrangement was for Mr. Graziano to lay out the money for materials (i.e.: from Home Depot) and perform the renovations.

57.    Plaintif in turn provided reimbursement to Mr. Graziano by making cash withdrawals from his bank account.

58.    In response, the HR representative inquired, "Was he really your cousin, or was he just some Italian guy, because all you Italians call each other cousins."

59.    This generalization offended Plaintiff, and he stated, "I could draw blood and do a DNA test to prove it."

60.    Plaintiff realizing his career and livelihood was in the hands of a biased individual, called his wife into the room to listen in.

61.    Plaintiff also asked his wife if she had saved any receipts, which she did.

62.    Plaintiff promptly forwarded all receipts to Chase for review.

63. The HR representative reached out again, this time requesting more receipts which my client was able to provide.

64. There was another contractor performing work on the backyard pool deck, and the HR representative questioned why Plaintiff was having all this work done at the same time.

65. Plaintiff responded that he had just received his bonus and IRS tax refund.

66. On the morning of May 28, 2021, Plaintiff received a phone call from his mother in Italy indicating that his father was dying.

67. Plaintiff informed his supervisor that he was traveling to Italy (specifically Palermo, Sicily) on an emergent basis to see his father.

68. Plaintiff further informed the woman working on the AML inquiry about the travel and that she might not hear from him for a time.

69. Plaintiff wished to avoid the perception that he was avoiding her phone calls and emails.

70. She told Plaintiff to go ahead and take care of his dad, and that "everything looks good here."

71. She further instructed him to contact her upon his return, and stated, "if we need anything else, I will let you know."

72. She left every assurance that "everything looked good."

73. Plaintiff's father passed away while he was in Sicily.

74. Upon Plaintiff's return home, he sent an email (on his first day back, June 8, 2021) informing the AML investigator of his return.

75. She emailed back stating that she was working on other cases but will let him know if she needed anything else.

76. She left Plaintiff with the impression that everything was fine.

77. Throughout the AML investigation, Plaintiff kept his supervisor, Ms. Barnie Keller, fully informed.

78. Ms. Keller stated she was aware of the AML investigation, but not sure what it was about.

79. Ms. Keller stated she was unconcerned as long as Plaintiff had receipts.

80. On June 22, 2021, Ms. Keller texted Plaintiff with instructions to attend a meeting in her office.

81. Plaintiff assumed this pertained to a need for him to assist with a project, or something of that nature.

82. At the meeting Ms. Keller tearfully terminated Plaintiff's employment.

83. Keller stated it was an "HR decision."

84. She further stressed that in her twenty six (26) years of doing her job, it was the hardest termination of her career.

85. She added she was losing her most dependable manager.

86. Indeed, throughout the COVID crisis, while other managers stayed home collecting full salaries for months, because Chase closed their branches, Plaintiff regularly worked overtime to cover other branches for no additional pay.

87. Thus, after years of reliable service, Chase terminated Plaintiff for withdrawing his own documented income, bonuses, and tax refunds, out of his own bank account, to simply renovate his home.

88. None of this mattered to Chase, and the AML investigator treated Plaintiff like a criminal due to her bias and application of an aberrant interpretation of money laundering law.

89. For instance, nearly the entirety of "structuring," is on the deposit side, that is repeatedly funneling smaller (less than $10,000.00) cash deposits into the banking system to hinder a requirement by a bank to file a CTR.

90. Structuring on the withdrawal side, as in Plaintiff's situation, presents **no risk** of money laundering especially when the deposits consist of documented earnings.

91. The real problem in this instance is that the AML investigator failed to allow for the vast distinction between true structuring of cash deposits, versus completely innocent withdrawals of documented earnings, due to her personal bias, and misunderstanding of true money laundering via "structuring."

92. The AML investigator revealed her bias in the statement, "Was he really your cousin, or was he just some Italian guy, because all you Italians call each other cousins."

93. Such expressions trigger New York State and City anti-discrimination law, even if stated in jest.

94. This bias is based in perceptions that Italian-Americans are involved in organized crime.

95. However, according to FBI statistics, Italian-American organized crime members and associates only number approximately 3,000 in the entire United States.

96.  Given an Italian-American population of approximately eighteen million in our country, the study concludes that only one (1) in six thousand (6,000) has any involvement with organized crime.

97.  The bias of the AML investigator, and her groundless belief that there was "structuring," was permanently cemented when she became aware that my client traveled to Italy, and in particular Palermo, Sicily, the traditional capital of the "Mafia."

98.  The improper termination was thus based in part on wayward bias regarding Italian-Americans, a misunderstanding of money laundering, a failure to corelate withdrawals of indisputably documented earnings with the construction purchase receipts, and the temporal proximity of the termination with Plaintiff's travel to Sicily.

99.  Chase deprived Plaintiff of his livelihood.

100. As a result, Plaintiff also suffered physical and emotional stress; humiliation; severe emotional trauma; anxiety caused by lack of information; uncertainty; planning difficulty; and career, family and social disruption; which particularly impact those protected by New York State and City Human Rights Law.

101. Moreover, the Defendant's actions constitute recklessness or willful or wanton negligence; and/or a conscious disregard of the rights of others; and/or conduct so reckless as to amount to such disregard.

102. Plaintiff's counsel presented the above facts to Chase by correspondence dated September 23, 2021.

103. The Defendants left this correspondence unanswered.

### V.    CAUSES OF ACTION UNDER NEW YORK STATE EXECUTIVE (HUMAN RIGHTS) LAW § 296 and NEW YORK CITY HUMAN RIGHTS LAW § 8-107.

104. Plaintiff repeats all prior allegations.

105. The Defendants engaged in Unlawful Discriminatory Practices in violation of New York State Executive (Human Rights) Law §296 and New York City Administrative (Human Rights Law) Code § 8-107.[1]

106. Plaintiff is thus entitled to the Judgments set forth below in the "Wherefore" clause of this Complaint below.

**WHEREFORE**, on the foregoing causes of action, Plaintiff makes the following demands for Judgment:

---

[1] Plaintiff at trial will submit a separate cause of action under New York State and City law.

- That the Defendants have engaged in an Unlawful Discriminatory Practice under Executive Law § 296 and/or New York City Administrative Code § 8-107;

- Reinstatement;

- Back and Front Pay;

- Damages for Emotional Distress;

- Punitive Damages;

- Expenses Related to Unemployment and Re-employment.

- Judgment that any Defendants are jointly and/or severally liable to Plaintiff for Ten Million ($10,000,000.00) Dollars;

- Attorney's Fees and Costs in this action in an amount to be set by the Court at the close of this litigation;

- Pre-Judgment interest in an amount to be set by the Clerk of this Court at the close of this litigation;

- Any appropriate court order in aid of any judgment; and

- Any other and further relief the court deems appropriate.

Dated:      February 21, 2022

Respectfully Filed By:

**William P. Perniciaro**

Attorney for Plaintiff
84 New Dorp Plaza, Suite 205
Staten Island, NY  10306
Phone:      718-667-5000
Fax:          718-667-0798
Cell:         732-991-0204
Email:       wperni@msn.com

## VERIFICATION

STATE OF NEW YORK          )
                          (     ss:
COUNTY OF RICHMOND         )

FILIPPO LETO, being duly sworn, deposes and says:

I am the Plaintiff in the within action; I have read the foregoing
Verified Complaint and know the contents thereof; that same is
true to my knowledge, except to the matters therein stated to be
alleged on information and belief, and as to those matters, I
believe them to be true.

Dated:     March 17, 2022

_____
FILIPPO LETO

Sworn to before me this 17
day of March, 2022.

```
WILLIAM P PERNICIARO
NOTARY PUBLIC, STATE OF NEW YORK
REG. NO. 02PE6235126
QUALIFIED IN RICHMOND COUNTY
COMMISSION EXPIRES: 02/07/20
```

## **Statement of Service by Mail and Acknowledgement of Receipt by Mail of Summons and Complaint or Summons and Notice or Notice of Petition and Petition**

Case Name:    FILIPPO LETO,

                Plaintiff,

                -against-

                JP MORGAN CHASE & CO.; and JOHN DOE, a fictitious name, real name unknown, representing the individuals and/or entities, engaging in unlawful activities described below,

                Defendants.

Court:          Supreme Court of the State of New York, Richmond County

Index Number:   150550/2022

### **A.    STATEMENT OF SERVICE BY MAIL**

To:

**JP MORGAN CHASE & CO.**
**383 Madison Avenue**
**New York, NY 10017**

The enclosed **Summons and Complaint** are served pursuant to section 312-a of the Civil Practice Law and Rules.

To avoid being charged with the expense of service upon you, you must sign, date and complete the acknowledgement part of this form and mail or deliver one copy of the completed form to the sender within thirty (30) days from the date you receive it. You should keep a copy for your records or your attorney. If you wish to consult an attorney, you should do so as soon as possible before the thirty (30) days expire.

If you do not complete and return the form to the sender within thirty (30) days, you (or the party on whose behalf you are being served) will be required to pay expenses incurred in serving the summons and complaint, or summons and notice, or notice of petition and petition in any other manner permitted by law, and the cost of such service as permitted by law will be entered as a judgment against you.

If you have received a complaint or petition with this statement, the return of this statement and acknowledgement does not relieve you of the necessity to answer the complaint or petition. The time to answer expires twenty (20) days after the day you mail or deliver this form to the sender. If you wish to consult with an attorney, you should do so as soon as possible before the twenty (20) days expire.

If you are served on behalf of a corporation, unincorporated association, partnership or other entity, you must indicate under your signature your relationship to the entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

It is a crime to forge a signature or to make a false entry on this statement or on the acknowledgement.

## B.    ACKNOWLEDGEMENT OF RECEIPT OF SUMMONS AND COMPLAINT OR SUMMONS AND NOTICE OR NOTICE OF PETITION AND PETITION

I received a Notice of Petition and Petition in the above-captioned matter at:

**JP MORGAN CHASE & CO.**
**383 Madison Avenue**
**New York, NY 10017**

_____1.    I am not in military service.

_____2.    I am in military service, and my rank, serial number and branch of service are as follows:

Rank:_____ __ _____

Serial number:_____

Branch of Service:_____

## C.    TO BE COMPLETED REGARDLESS OF MILITARY STATUS:

Date:  _____

I affirm the above as true under penalty of perjury.


_____

**Statement of Service by Mail and Acknowledgement of Receipt
by Mail of Summons and Complaint or Summons and Notice or
Notice of Petition and Petition**

Case Name:      FILIPPO LETO,

                       Plaintiff,

                       -against-

                       JP MORGAN CHASE & CO.; and JOHN DOE, a fictitious name, real name unknown, representing the individuals and/or entities, engaging in unlawful activities described below,

                       Defendants.

Court:             Supreme Court of the State of New York, Richmond County

Index Number:   150550/2022

## A.   STATEMENT OF SERVICE BY MAIL

To:

**JP MORGAN CHASE & CO.
383 Madison Avenue
New York, NY 10017**

The enclosed **Summons and Complaint** are served pursuant to section 312-a of the Civil Practice Law and Rules.

To avoid being charged with the expense of service upon you, you must sign, date and complete the acknowledgement part of this form and mail or deliver one copy of the completed form to the sender within thirty (30) days from the date you receive it. You should keep a copy for your records or your attorney. If you wish to consult an attorney, you should do so as soon as possible before the thirty (30) days expire.

If you do not complete and return the form to the sender within thirty (30) days, you (or the party on whose behalf you are being served) will be required to pay expenses incurred in serving the summons and complaint, or summons and notice, or notice of petition and petition in any other manner permitted by law, and the cost of such service as permitted by law will be entered as a judgment against you.

If you have received a complaint or petition with this statement, the return of this statement and acknowledgement does not relieve you of the necessity to answer the complaint or petition. The time to answer expires twenty (20) days after the day you mail or deliver this form to the sender. If you wish to consult with an attorney, you should do so as soon as possible before the twenty (20) days expire.

If you are served on behalf of a corporation, unincorporated association, partnership or other entity, you must indicate under your signature your relationship to the entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

It is a crime to forge a signature or to make a false entry on this statement or on the acknowledgement.

**B.    ACKNOWLEDGEMENT OF RECEIPT OF SUMMONS AND COMPLAINT OR SUMMONS AND NOTICE OR NOTICE OF PETITION AND PETITION**

I received a Notice of Petition and Petition in the above-captioned matter at:

**JP MORGAN CHASE & CO.**
**383 Madison Avenue**
**New York, NY 10017**

_____1.    I am not in military service.

_____2.    I am in military service, and my rank, serial number and branch of service are as follows:

Rank:_____

Serial number:_____

Branch of Service:_____

## C.    TO BE COMPLETED REGARDLESS OF MILITARY STATUS:

Date:  _____

I affirm the above as true under penalty of perjury.


_____